**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

Robert Hoffman, Plaintiff,

v. Cause No. 1:26-cv-1736

The Kroger Co., Defendant.

**COMPLAINT AND JURY DEMAND**

Plaintiff Robert Hoffman, by and through his attorney, brings this action against Defendant The Kroger Co., and alleges, on knowledge as to his own actions and otherwise upon information and belief, as follows:

**PARTIES**

1. Plaintiff Robert Hoffman ("Plaintiff") is an individual who resides in the State of Indiana. Plaintiff is a citizen of the State of Indiana.

2. Upon information and belief, Defendant The Kroger Co. ("Defendant") is a corporation that is incorporated in the State of Ohio and has its principal place of business in Cincinnati, Ohio.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq., and other applicable federal laws. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims occurred in this district.

**STATEMENT OF FACTS**

5. Plaintiff began employment with Defendant on or about June 23, 2025.

6. Plaintiff's position was Assistant Store Leader at Defendant's Indiana location.

7. Plaintiff's annual compensation was $63,500, with semiannual bonuses, the last of which was $4,000.

8. Plaintiff's benefits included two weeks' vacation, ten personal days, health insurance, vision coverage, and a 401(k) match up to 5%.

9. On or about February 20, 2026, at approximately 7:00 a.m., Plaintiff fell down the stairs at Defendant's store, injuring his right hip and lower back.

10. Plaintiff's hands were full at the time of the fall, and he was unable to break his fall with his hands.

11. Plaintiff landed on his right hip and lower back and had no prior back injury before this incident.

12. Prior to the injury, Plaintiff walked approximately 23,000 steps per day, but after the injury, he could not walk more than 3,000 steps per day.

13. Plaintiff reported the injury to Sedgwick, Defendant's workers' compensation administrator, on February 21, 2026.

14. Three witnesses were present when Plaintiff fell: Becky Robinson, Shelly (Department Manager, General Merchandise), and Teresa.

15. Plaintiff was unable to leave the store after the injury because he was the only manager present that day.

16. Sedgwick directed Plaintiff to Ortho Indy, which did not accept workers' compensation cases on weekends, and then to Riverview ER, which advised that Plaintiff needed a specialist.

17. Sedgwick sent Plaintiff to urgent care three days later, which also advised that Plaintiff needed a specialist.

18. In early March 2026, Plaintiff was referred to Forte Sports Medicine and saw Dr. McCollum.

19. Dr. McCollum ordered hip and back MRIs for Plaintiff.

20. Plaintiff was placed on light restrictions, including use of a cane.

21. Plaintiff informed Store Manager Brent McNeely and showed him the doctor's notes indicating the need for an MRI.

22. Plaintiff underwent two MRIs at Rayus in Fishers, Indiana.

23. The MRIs revealed deep contusions on Plaintiff's hip with edema and swelling, a tear in the joint, and L5 compression, as well as severe acute bone contusions at the right L5-S1 pedicle, facet, and superior sacrum, and L5 nerve impingement.

24. Plaintiff's medical providers indicated that fusion surgery and/or hip replacement was possible.

25. Plaintiff began physical therapy in March 2026 at a frequency of twice per week.

26. On or about April 4, 2026, Plaintiff received a cortisone injection in his back, which provided significant relief.

27. On April 16, 2026, a workers' compensation doctor assigned Plaintiff severe physical restrictions, including a 10-pound lifting limit, no repetitive bending or twisting, and no standing for more than 20 minutes.

28. On April 17, 2026, Plaintiff informed Store Manager Brent McNeely of the new restrictions and offered a printed copy of the restrictions.

29. Store Manager Brent McNeely refused to accept the physical copy of the restrictions, stating, "No thanks, I don't need it, the insurance has it on file."

30. After April 17, 2026, Plaintiff began using a motorized Amigo cart every shift to perform his job duties.

31. Plaintiff alleges that no interactive process occurred regarding his restrictions and that management did not appear to care.

32. On April 25, 2026, the grocery manager, Brandon, transferred to produce and left the store for training.

33. The other grocery manager, Scott, only worked overnight stocking due to being short-staffed.

34. After April 25, 2026, Plaintiff was required to set weekly ad sets by himself, which required physically moving product in the store without assistance, changing all the grocery end caps (including moving heavy metal shelves), going up and down ladder to remove top stock, and restocking merchandising bins. All of these tasks were extremely physically challenging.

35. Plaintiff was required to absorb the physical duties of two full-time management roles.

36. Plaintiff was forced to break his medical restrictions, causing significant pain.

37. On April 28, 2026, Plaintiff was unable to complete the first solo ad set.

38. On April 28, 2026, Store Manager Brent McNeely sent Plaintiff a text instructing him to build displays that night.

39. On April 29, 2026, Plaintiff completed the ad set after working a grueling open-to-close shift and sent a text to the management team stating he was struggling to keep pace due to severe physical pain.

40. On April 29, 2026, Store Manager Brent McNeely texted Plaintiff, "I let you do it just to see what you could do."

41. On April 30, 2026, Plaintiff retained Klezmer Maudlin as his workers' compensation attorney and filed a workers' compensation claim.

42. On May 1, 2026, Sedgwick abruptly cancelled Plaintiff's authorized physical therapy sessions, leaving Plaintiff without access to medical relief.

43. After cancellation of physical therapy, Plaintiff continued to perform heavily unaccommodated work duties.

44. In early May 2026, Plaintiff reported to management via group text that his hip, back, and leg were "on fire" from physical duties.

45. Plaintiff stated that scanning high shelves from the Amigo cart was very challenging and took hours.

46. On or about May 8, 2026, a corporate private investigator photographed Plaintiff resting and icing his back in his vehicle.

47. Plaintiff had sat in his car to ice his back during a time he had intended to attend physical therapy, which had been cancelled.

48. On May 10, 2026, Plaintiff performed a W2W task that took three and a half hours.

49. On May 11, 2026, Store Manager Brent McNeely sent a text to the management group pushing them to get everything done and to never leave without talking to the overnight staff.

50. Plaintiff responded by apologizing for leaving the other night, explaining that he needed to get home and ice his back as it was on fire.

51. On May 20, 2026, Store Manager Brent McNeely texted explicit instructions directing Plaintiff to falsify three days of backroom and daily grocery counts.

52. Plaintiff completed the data manipulation under duress and received a "thumbs up" validation emoji from management.

53. On May 26, 2026, Store Manager Brent McNeely held an all-hands meeting and organized volunteers from three departments to complete heavy sales ad restructuring ahead of a corporate executive visit.

54. During the May 26, 2026 meeting, Brent McNeely stated, “We know Robert is struggling,” and asked for volunteers; four employees volunteered and were paid overtime. Plaintiff worked from 9 am to 10 pm to accomplish the tasks, along with the volunteers and Brent. It took this entire team to do this whereas previously Plaintiff was doing this work all by himself, in violation of the doctor’s restrictions.

55. The store passed a corporate visit following the volunteer effort.

56. On May 28, 2026, Plaintiff met with HR representative Daniel LaPorte regarding photographs of Plaintiff in his car icing his back.

57. On May 28, 2026, Plaintiff was placed on indefinite suspension.

58. On June 9, 2026, Plaintiff was terminated for “time theft.”

59. A letter dated June 9, 2026, confirming Plaintiff’s termination, was signed by Sheila Fair, Corporate Central Division HR.

60. The termination letter was received by Plaintiff on June 20, 2026.

61. Plaintiff received a letter from MetLife denying FMLA leave on the basis that he had not been employed for one year and denying long-term disability. Plaintiff then received a letter stating that Plaintiff was approved for FMLA.

62. On July 23, 2026, a MetLife representative informed Plaintiff that he was approved for FMLA.

63. Plaintiff states he was never given FMLA leave despite this communication.

64. Plaintiff filed for long-term disability benefits.

65. Plaintiff is 53 years old and was in good health prior to the injury.

66. Plaintiff now reports inability to walk more than 3,000 steps daily following the injury.

67. Plaintiff is currently seeking new employment.

**CAUSES OF ACTION**

**COUNT ONE (FMLA Interference and Retaliation Against Defendant Kroger)**

68. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 67 above as if fully set forth herein.

69. Plaintiff was an eligible employee under the Family and Medical Leave Act (FMLA), and Defendant was a covered employer under the FMLA at all relevant times.

70. Plaintiff suffered from a serious health condition that rendered him unable to perform the essential functions of his job, and he provided notice to Defendant of his need for leave due to this condition.

71. Defendant interfered with Plaintiff's rights under the FMLA by failing to provide FMLA leave, denying Plaintiff's request for FMLA, and terminating Plaintiff's employment in retaliation for seeking FMLA leave and/or exercising rights protected by the FMLA.

72. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer damages, including lost wages, lost benefits, and emotional distress, in an amount to be determined at trial.

**COUNT TWO (Frampton Retaliatory Discharge for Filing a Workers' Compensation Claim Against Defendant Kroger)**

73. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 67 above as if fully set forth herein.

74. Plaintiff suffered a work-related injury and filed a claim for workers' compensation benefits, of which Defendant had actual knowledge.

75. Defendant terminated Plaintiff's employment in retaliation for Plaintiff's exercise of his rights under Indiana's workers' compensation laws, including but not limited to filing a claim and seeking medical treatment and accommodations.

76. Defendant's stated reason for termination was pretextual, as Plaintiff was terminated for alleged "time theft" shortly after engaging in protected activity, and the true motivation was retaliation for Plaintiff's workers' compensation claim and related protected conduct.

77. As a direct and proximate result of Defendant's retaliatory discharge, Plaintiff has suffered and continues to suffer damages, including lost wages, lost benefits, and emotional distress, in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Robert Hoffman respectfully requests that this Court:

1. Declare that The Kroger Co. violated Plaintiff Robert Hoffman's rights under the Family and Medical Leave Act (FMLA) by interfering with and retaliating against him for exercising his rights to protected leave, and by failing to provide FMLA leave as required by law.

2. Award Plaintiff Robert Hoffman all lost wages, lost benefits, and other make-whole relief against The Kroger Co. for violations of the FMLA, in an amount to be determined at trial.

3. Award Plaintiff Robert Hoffman liquidated damages against The Kroger Co. as permitted by the FMLA, in an amount to be determined at trial.

4. Award Plaintiff Robert Hoffman reasonable attorneys' fees, costs of suit, and expenses, including expert witness fees, as authorized by 29 U.S.C. § 2617(a)(3).

5. Award Plaintiff Robert Hoffman prejudgment and post-judgment interest as permitted by law.

6. Declare that The Kroger Co. unlawfully discharged Plaintiff Robert Hoffman in retaliation for filing a workers' compensation claim and exercising rights protected by Indiana law.

7. Award Plaintiff Robert Hoffman all lost wages, lost benefits, and other compensatory damages against The Kroger Co. for retaliatory discharge in violation of Indiana law, in an amount to be determined at trial.

8. Award Plaintiff Robert Hoffman damages for emotional distress against The Kroger Co. for retaliatory discharge in violation of Indiana law, in an amount to be determined at trial.

9. Award Plaintiff Robert Hoffman reasonable attorneys' fees, costs of suit, and expenses as permitted by law.

10. Award Plaintiff Robert Hoffman prejudgment and post-judgment interest as permitted by law.

11. Grant Plaintiff Robert Hoffman such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Mark R. Waterfill

Mark R. Waterfill, #10935-49
Mark R. Waterfill, Attorney at Law, P.C.
6425 E. Co. Rd. 600 S.
Plainfield, IN 46168
(317) 501-6060
mark@waterfilllaw.com